Case 5:25-cr-00156-ECC     Document 127     Filed 09/19/25     Page 1 of 3



United States Department of Justice

*United States Attorney*
*Northern District of New York*

*100 South Clinton Street, P.O. Box 7198*     Tel.: (315) 448-0672
*James M. Hanley Federal Building*            Fax: (315) 448-0658
*Syracuse, New York 13261-7198*

September 19, 2025

VIA CM/ECF
Hon. Elizabeth C. Coombe
U.S. District Judge
Federal Building and U.S. Courthouse
P.O. Box 7336
Syracuse, New York 13261-7336

     Re:    *United States v. Doris Aleman-Bonilla*
              Case No. 5:25-CR-00156 (ECC)

Dear Judge Coombe,

     At the final pretrial conference held on September 12, 2025, the Court requested a letter brief providing any additional authorities regarding allowing a defendant to provide conclusory testimony at trial that she possessed a particular mental state, using the same word that appears in the jury instructions' elements of the offense. For example, may the defendant in this case answer the question "are you here [in the United States] *voluntarily*?" where the jury will be instructed that, as part of the being "found in" element of the offense, the "Government must prove that the defendant was *voluntarily* in the United States either at the time she was found here or at some time after her last return to the United States before she was so found."

     First, the Government again relies on the cases it cited in its Second Omnibus Motion in Limine, dkt. 114 at 3-4. The undersigned did not identify cases directly addressing this issue in the context of a defendant's own testimony, but submits that the reasoning in the following cases applies equally in that context too.

     In *United States v. Scop*, 946 F.2d 135, 140 (2d Cir. 1988), the Second Circuit ruled that the trial testimony of an SEC investigator in which he made "repeated statements embodying legal conclusions exceeded the permissible scope of opinion testimony." *Id.* at 139. The court was particularly troubled by the witness's testimony using words like "manipulation," "scheme to defraud," and "fraud," because those words "are not self-defining terms but rather have been the subject of diverse judicial interpretations." *Id.* at 140.

     Persuasive authority is found in other circuits. The Sixth Circuit developed a test to determine whether witness testimony embraces a prohibited legal conclusion: "The best resolution of this type of problem is to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular.

If they do, exclusion is appropriate." *Torres v. County of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985). In *Torres*, which the Second Circuit cited in *Scop*, the Sixth Circuit found that it was error (though harmless) for the district court to permit a fact witness at an employment discrimination trial to answer on cross-examination whether she "believe[d] that [plaintiff] had been discriminated against because of her national origin in that interview process." *Id.* at 149-151. The court applied its test to find that the testimony was improper because "the question tracks almost verbatim the language of the applicable statute," and "the term 'discrimination' has a specialized meaning in the law and in lay use the term has a distinctly less precise meaning." *Id.* at 151. In a recent case in the Sixth Circuit, a district court applied *Torres* and ruled pre-trial that a witness could not testify about the "reasonableness" and defective nature of a product because "[t]hese terms have a separate, distinct and specialized meaning in the law." *Burgin v. Ethicon Inc.*, No. 3:20-CV-111-RGJ, 2023 WL 5985524, at *10 (W.D. Ky. Sept. 14, 2023).

In *United States v. Wood*, 207 F.3d 1222 (10th Cir. 2000), the Tenth Circuit reversed judgment and remanded for a new trial in a murder case. In reaching that decision, the court concluded that an expert witness should not have been permitted to testify: (1) in defining homicide, giving the example of "where a doctor . . . has *intentionally* injected potassium to end a person's life;" (2) a homicide is different from an accident because a homicide involves intentional action "that was reckless . . ."; and (3) "[the defendant's injection of his patient with potassium causing his death] . . . was *reckless* in the sense of not being a reasonable action on the part of the physician . . ." *Id.* at 1235-36. The court noted that this testimony "while not cast in precisely the same terminology as the statute, case law, or instruction, recites the critical components they identify," and that it was further "substantively indistinguishable from the instruction that the mens rea for involuntary manslaughter is met if the defendant's actions demonstrate a "reckless disregard for human life." *Id.* at 1236. The court concluded that this impermissibly "dictates the final conclusion that [the defendant] possessed the requisite mens rea for involuntary manslaughter." *Id.*

Although many of the cases involving opinion testimony as to legal conclusions arise in the context of expert testimony, the reasoning applies equally to lay testimony. *Cameron v. City of N.Y.*, 598 F.3d 50, 62 & n.5 (2d Cir. 2010) (internal quotation omitted) ("The cases laying out this rule have focused on *expert* witnesses. But the impropriety of allowing a lay witness to testify in the form of a legal conclusion is all the clearer."). While an opinion "is not objectionable just because it embraces an ultimate issue," Fed. R. Evid. 704(a), it must be "helpful to clearly understanding the witness's testimony or to determining a fact in issue." Fed R. Evid. 701(b). As the Advisory Committee noted in the notes to Rule 704, Rules 701, 702, 704, and 403 "afford ample assurances against the admission of opinions which would merely tell the jury what result to reach . . . . They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria." The Advisory Committee Notes provide this useful example:

> Thus the question, "did T have capacity to make a will?" would be excluded, while the question "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" would be allowed.

Applying these principles to this case, the question then is whether the term "voluntarily" as it's used in this context has a "separate, distinct and specialized meaning in the law different from that present in the vernacular," *Torres*, 758 F.2d at 151, *i.e.,* whether it is a "self-defining term[] [or has] been the subject of diverse judicial interpretations," *Scop*, 946 F.2d at 140. The answer is that it has a specialized meaning in the law. As the parties' extensive prior briefing on this topic indicates, along with the first jury's note to the Court requesting its definition, the term "voluntarily" as it is used in describing the elements of the crime has multiple meanings, and those meanings vary. But it does have a particular legal meaning that is relevant to the ultimate issue in this case. In ruling on pretrial matters before the first trial in this case, the Court also recognized that the term had a particular, legal meaning:

> But I do want to focus on what voluntariness means. According to Black's Law Dictionary, voluntariness is a willed bodily movement, voluntary action may be either compulsory or free. The Model Penal Code defines involuntary as a reflex or convulsion; a bodily movement during unconsciousness or sleep; conduct during hypnosis or resulting from hypnotic suggestion; a bodily movement that otherwise is not a product of the effort or the determination of the actor, either conscious or habitual.
>
> So this is plainly a very low standard that gets at whether someone has been able to walk across the border even if it was under duress, that could still be voluntary action.

Final Pretrial Conf. Tr., dkt. 114-1, at 34.

Accordingly, the authorities cited above and those referenced in the Government's prior briefing support the Government's position that the defendant should not be permitted to offer her opinion on the ultimate issue: whether she was here "voluntarily."

JOHN A. SARCONE III
Acting United States Attorney

By:    */s/ Matthew J. McCrobie*
Matthew J. McCrobie
Assistant United States Attorney
Bar Roll No. 702739